*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *NORTH CREEK FARM, INC.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 08-43-P-S* |
| | ) | |
| *INHABITANTS OF THE TOWN OF* | ) | |
| *PHIPPSBURG, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*RECOMMENDED DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

The defendants, the Town of Phippsburg, Leighton Rainey, Marie Varian, David Barnes and John Michael Young, move separately for summary judgment in this action alleging defamation and violation of unspecified federal constitutional rights that was removed from the Maine Superior Court (Sagadahoc County). I recommend that the court grant the motions.

### I. Summary Judgment Standards

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).

1

"A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with

an appropriate record citation.  *See id.*  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id.*  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id.*

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The following undisputed material facts are appropriately presented and supported in the parties' respective statements of material facts submitted pursuant to Local Rule 56.

The plaintiff, North Creek Farms, Inc. ("NCF"), was incorporated in Maine on September 8, 1997.  Statement of Material Facts of Defendants Town of Phippsburg, John M. Young, Marie Varian, Leighton Rainey and David Barnes ("Defendants' SMF") (Docket No. 26) ¶¶ 1-2; Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 41) ¶¶ 1-2.  Susan Verrier and Kai Jacob each own 50 per cent of NCF.  *Id.* ¶¶ 3-4.  Verrier is the president of NCF, and Jacob is the secretary and treasurer.  *Id.* ¶¶ 5-6.

NCF has not adopted bylaws or conducted regular or annual meetings.  *Id.* ¶¶ 7-8.  It conducts its operations on property owned by Verrier and Jacob in the town of Phippsburg.  *Id.* ¶ 9.  The principals have not received salaries or income distributions from NCF.  *Id.* ¶¶ 13-14.  NCF was administratively dissolved by the State of Maine on September 10, 2008, for failure to file an annual report.  *Id.* ¶ 15.

The town of Phippsburg conducts its business with a town meeting/board of selectmen form of government.  *Id.* ¶ 16.  The town's defense in this action is being provided by Redland Insurance Company under two liability insurance policies.  *Id.* ¶ 17.  Both policies provide limits of liability that limit coverage to those areas for which governmental immunity has been expressly waived by the Maine Tort Claims Act.  *Id.* ¶ 18.  Defendant John Michael Young is the town administrator for Phippsburg.  *Id.* ¶ 19.   The title of his position was changed from selectmen's clerk approximately four years ago.  *Id.* ¶¶ 20-22.   His duties are limited to administrative functions.  *Id.* ¶ 23.

Young's duties include attending meetings of the selectmen and preparing minutes of those meetings, and carrying out the day-to-day administration of the town offices, including waiting on customers and preparing automobile registrations.  *Id.* ¶ 24.  He does not prepare the minutes of the meetings of the town's planning board and has no involvement with its meetings

4

other than posting the minutes of its meetings on the town's web site. *Id.* ¶¶ 25-26. He advertises the selectmen's meetings and prepares correspondence related to their meetings. *Id.* ¶ 28.

Defendant Leighton Rainey is the code enforcement officer ("CEO") for the town of Phippsburg. *Id.* ¶ 30. He is responsible for enforcing town ordinances. *Id.* ¶ 31. He was appointed to this position by the board of selectmen in the spring of 2000. *Id.* ¶¶ 32-33. The appointment is made annually. *Id.* ¶ 34. The position requires licensing by the state. *Id.* ¶ 35. Rainey has met licensing requirements on topics including legal issues, building standards, shoreland zoning, and land use issues. *Id.* ¶ 36. As code enforcement officer, Rainey does not issue business permits, which are issued jointly by the board of selectmen and the planning board. *Id.* ¶¶ 37-38.

Defendant Marie Varian is a member of the Phippsburg planning board. *Id.* ¶ 39. She has served on this board for 20 years. *Id.* ¶ 40. She has served as chair of the board since 1994. *Id.* ¶ 41. The Phippsburg planning board hears cases that come before it pursuant to ordinance. *Id.* ¶ 42.

Defendant David Barnes served as the town's health officer from 1970 to July 2007. *Id.* ¶ 45. He did not serve on the planning board or the board of selectmen. *Id.* ¶ 46. His duties included answering and investigating complaints about water and sewer systems. *Id.* ¶ 47.

NCF was initially established to conduct business as a plant nursery. *Id.* ¶ 74. In 2001, NCF was licensed as a retail food establishment by the Maine Department of Agriculture, Food & Rural Resources. *Id.* ¶ 75. Pursuant to this license, NCF was permitted to sell baked goods, hot food and cold food prepared on site, dairy products, frozen food, and fresh produce. *Id.* ¶ 76. NCF has renewed its retail food establishment license annually. *Id.* ¶ 77.

At an October 10, 2001 planning board meeting, NCF approached the board to discuss the possibility of preparing and selling food and coffee for take-out. *Id*. ¶ 79. The plaintiff stated that the proposed business use would be "for take-out only and no consumption on premises." *Id*. ¶ 80. It indicated to the board that its business would be strictly take-out. *Id*. ¶ 82. A final decision on NCF's application was postponed pending a final hearing. *Id*. ¶ 84.

On October 18, 2001, NCF applied for a business permit from the town. *Id*. ¶ 85. In its application, NCF requested a permit for a take-out food business to be operated in conjunction with its previously licensed nursery business. *Id*. ¶ 86. NCF did not indicate on its application that it intended to serve food prepared on the premises for on-premise consumption. *Id*. ¶ 87. A final hearing on this application was held on November 7, 2001. *Id*. ¶ 88. At this hearing, NCF's proposed business use was stated as: "Proposed use is sale of take out food prepared on premises, coffee, tea, soups, etc." *Id*. ¶ 89. At this hearing, future use was described as "custom made food, strictly takeout and not as a restaurant." *Id*. ¶ 91.

Varian, a member of the planning board that was considering NCF's application, had a daughter who owned and operated a restaurant located in Phippsburg. *Id*. ¶ 94. That restaurant, Anna's Water's Edge Restaurant, is located on land owned by Sebasco Wharf, Inc., which in turn is owned by Varian's husband. *Id*. ¶¶ 95-97. NCF's principals were aware that Varian's daughter owned and operated Anna's Water's Edge Restaurant and did not object to Varian's participation in the consideration of its permit application in November 2001. *Id*. ¶¶ 98-99. NCF considered the business conducted at Anna's Water's Edge Restaurant to be so different from its proposed business that it did not present a conflict of interest. *Id*. ¶ 100.

On November 7 or 11, 2001, the town issued a permit to NCF to sell prepared food for take-out. *Id*. ¶¶ 102-03. NCF began serving food prepared on premises after it obtained the

permit. *Id*. ¶ 105.  In 2005, Rainey received a report that people were buying food prepared on the premises at NCF and eating it on the premises of NCF.  *Id*. ¶ 106.  Rainey visited NCF during the first week of May 2005.  *Id*. ¶ 107.  At that time, he found that NCF was serving food prepared on the premises for consumption on the premises.  *Id*. ¶ 108.  NCF did not deny that it was serving food prepared on the premises for consumption on the premises, but asserted that it had not intentionally violated its permit.  *Id*. ¶¶ 109-10.[1]  NCF had assumed, without consulting an attorney, that any additional town licensing requirements were overridden by its compliance with state licensing requirements.  *Id*.¶¶ 111-12.

Before writing to anyone at NCF, Rainey stopped in and talked to Verrier.  *Id*. ¶ 113.  He told her that NCF was operating beyond the scope of its current permit.  *Id*. ¶ 114.  He also informed her that NCF needed an expansion permit in order to continue serving food for on-premise consumption.  *Id*. ¶ 115.  On the same day, Jacob came to Rainey's office.  *Id*. ¶ 116.  Rainey gave Jacob an application for an expansion of business permit and instructed him to contact Varian in order to get the application before the planning board at its next meeting, which would take place in approximately two weeks.  *Id*. ¶¶ 117-19.  The town did not receive NCF's application prior to that scheduled May 2005 meeting.  *Id*. ¶ 120.

Rainey sent a letter dated May 20, 2005, to NCF, stating as follows:

> In the first week of May I visited NCF having been informed that you are serving meals on premises which is not part of your current permit. Having found that you were indeed serving meals for consumption on premises I informed you that your current Town permit was only for take-out food prepared on premises and not sit down dining and that you would need to apply for and receive a permit from the Town (through the

---

[1] The plaintiff's response to these two paragraphs of the defendants' statement of material facts is a qualification, asserting that "[t]he statement is broader than is supported by the citation to the record.  The sum and substance of Mr. Jacob's testimony regarding their food service, and what the customer did with the food after purchasing it, can be found by reviewing the text from Jacob Dep. at 87:13-25; 88:1-25 (9/3/08) (SOMF Exhibit 3); and 89:1-24 (Opp. SMF Exhibit 2)."  Plaintiff's Responsive SMF ¶¶ 109-10.  This response does not explain what it is about the defendants' paragraphs 109 and 110 that is being qualified, or why.  In any event, the cited portions of the record do not require modification of those paragraphs beyond what I have included in the text.

> Planning Board) to continue doing this activity.  As of the [sic] May 18th, 2005 Planning Board meeting the Town had not received an application from you.
>
> As this time I am requiring that you stop any activity that you are not currently permitted for in conjunction with your business until the proper permits have been issued.
>
> Failure to do so may result in fines and legal action by the Town of Phippsburg.

*Id.* ¶ 121.

On May 20, 2005, NCF submitted a second business application to the town, in which it requested permission to operate a business including "prepared food . . . consumption on premises." *Id.* ¶¶ 122-23.

On June 15, 2005, the board of selectmen and planning board held a joint meeting to consider NCF's business expansion application.  *Id.* ¶ 125.  Young did not attend this meeting. *Id.* ¶ 126.  At the meeting, Varian explained that her daughter owned and operated Anna's Water's Edge Restaurant and offered to recuse herself from consideration of NCF's application. *Id.* ¶¶ 127-28.   Alan Douglass, a member of the board of selectmen, explained that his wife owned Sue's Hot Dog Stand and offered his recusal.  *Id.* ¶¶ 132, 134-36.  Jacob has no direct evidence that Varian or Douglass improperly influenced other selectmen or planning board members at this meeting.  *Id.* ¶¶ 142-43.

On that day, the town issued a conditional business expansion permit to NCF.  *Id.* ¶ 144. The permit allowed NCF to serve food prepared on premise for consumption on premise.  *Id.* ¶ 145. As a condition of approval, the permit required confirmation from a certified site evaluator that NCF's current waste disposal system was adequate for a proposed 12-seat business application.  *Id.* ¶ 146.  The permit required that this confirmation be received by the town within 21 days.  *Id.* ¶ 147.   The permit also required that the business be operated in conformance with

all codes, town ordinances, and federal and state laws, as well as the terms proposed in the application for the permit and any restrictions imposed by the permit. *Id*. ¶ 149.   Rainey sent a follow-up letter to NCF on June 16, 2005, which NCF received on or about that day. *Id*. ¶¶ 150, 152.  The letter included a list of all practicing site evaluators in the state. *Id*. ¶ 153.

On June 21, 2005, NCF sought clarification from Rainey regarding the conditions attached to the June 15, 2005, permit. *Id*. ¶ 154.  Rainey e-mailed a response on June 21, 2005. *Id*. ¶ 155.[2]

Barnes' interaction with NCT consisted of one on-site inspection in June or July 2005 in his capacity as town health officer. *Id*. ¶¶ 156-57.  He felt that NCF was required to have a double sink on the premises as well as a restroom for its customers' use. *Id*. ¶ 158.  He did not issue any order to NCF as a result of his visit. *Id*. ¶ 159.

On June 22, 2005, the Maine Department of Health and Human Services received a complaint from Officer John Skroski of the Phippsburg police, alleging that a food handler at NCF was possible infected with hepatitis A.  *Id*. ¶¶ 160-61.  He also alleged that NCF was possibly serving alcohol. *Id*. ¶ 162.   On July 1, 2005, the Department conducted a fact-finding investigation of NCF. *Id*. ¶ 163.  As a result of the investigation, the Department found that NCF lacked a handwash sink, a utility sink, and a hood system. *Id*. ¶¶ 164-66.  It also found that NCF was preparing potentially hazardous food items including homegrown food products, raw Maine curried shrimp salad, Maine crabs, and Maine mussels, and that NCF employed a cook who had hepatitis C.  *Id*. ¶¶ 168-69.

---

[2] The plaintiff denies this paragraph of the defendants' statement of material facts, but its denial extends only to the substance of the e-mail, not to the fact that it was sent and received.  Plaintiff's Responsive SMF ¶ 155.

As part of its response to the conditional permit, NCF hired Kenneth Cotton to inspect its waste disposal system.  *Id.* ¶ 170.   Cotton has been a licensed site evaluator for 29 years and is also a licensed septic system inspector.  *Id.* ¶¶ 171-72.   NCF notified Cotton of the planning board's expectations regarding compliance with state law and provided him with the letter from Rainey detailing the town's requirement of a statement that the waste disposal system was adequate.  *Id.* ¶¶ 173-74.   NCF hoped that Cotton would provide such a statement.  *Id.* ¶ 175.   Cotton informed NCF that he defined "adequate" as meeting code criteria, and that NCF's existing system did not meet code criteria.  *Id.* ¶¶ 176-77.   He testified that the use of the existing system was not legal.  *Id.* ¶ 178.

It was Verrier's opinion that NCF need not comply with applicable codes, based on the fact that NCF had been operating the same way since 2001 and nobody had asked them to meet any code.  *Id.* ¶¶ 180-81.   Cotton told NCF's principals that he could write only that there was no malfunction in the existing system.  *Id.* ¶ 186.   He did not address the adequacy of the system in his July 3, 2005, letter because he knew it was not adequate.  *Id.* ¶ 188.   He noted that the property was very well suited for a new disposal system.  *Id.* ¶ 189.

Rainey received Cotton's letter on July 6, 2005.  *Id.* ¶ 190.   Rainey's judgment was that Cotton's letter did not satisfy the permitting conditions.  *Id.* ¶ 192.   He deemed the letter deficient because it did not provide proof that the system was in compliance with state waste water rules.  *Id.* ¶ 193.   On July 6, 2005, the state Department of Health and Human Services faxed the results of its investigation to the state Department of Agriculture, Food & Rural Resources.  *Id.* ¶ 194.   On July 7, 2005, NCF was inspected by the Department of Agriculture.  *Id.* ¶ 195.   Inspector Heidi Chadbourne found that potentially hazardous food was being prepared in a home food environment, that the number or location of sinks was inadequate, that animals

were in the operational premises, that non-food contact surfaces were not easily cleanable, and that a screen door was required in the kitchen. *Id*. ¶¶ 196-201.

On July 8, 2005, Rainey wrote another letter to NCF, directing it to immediately cease preparing and serving meals for on-premises consumption. *Id*. ¶¶ 202-03. The letter did not include a requirement that a new waste water system be installed. *Id*. ¶ 206. NCF received this letter on July 8, 2005. *Id*. ¶ 208. NCF ceased selling food prepared on premises for consumption on the premises on or about July 8, 2005. *Id*. ¶ 209. About one month later, NCF stopped taking affirmative action to require customers to take food purchased from NCF off NCF's premises before consuming it. Plaintiff's Responsive SMF ¶ 210. NCF took this action because its principals felt that they had satisfied the conditions of the conditional permit and on the advice of NCF's attorney. Defendants' SMF ¶¶ 211-12; Plaintiff's Responsive SMF ¶¶ 211-12.

After receiving Rainey's July 8, 2005 letter, NCF hired a second licensed site evaluator, Timothy Buck. *Id*. ¶¶ 213-14. NCF told Buck that it needed him to inspect the site to see if the waste disposal system that served the kitchen was failing, and that it needed something to state that the system was adequate. *Id*. ¶¶ 216-17. For the purpose of evaluating the system's adequacy, it did not matter what type of system was in use. *Id*. ¶ 223. Before visiting the site, Buck wrote to the town on July 13, 2005, stating that he planned to perform an invasive inspection at the site and predicting that NCF's system should be more than adequate to serve both the restaurant and a dwelling. *Id*. ¶¶ 224, 226.

Buck inspected NCF's system on July 25, 2005. *Id*. ¶ 227. He told NCF's principals that NCF needed a new system to comply with the state Health and Engineering Code. *Id*. ¶ 231. He wrote a letter dated July 25, 2005, in which he stated his belief that the existing system, which he

characterized as a dry well, was adequate.  *Id.* ¶ 234.  He designed a proposed replacement system in July 2005.  *Id.* ¶ 235.  He subsequently designed a second replacement system based on the use of paper plates at NCF.  *Id.* ¶ 236.

Rainey considered Buck's July 25 letter to state only that the dry well was not malfunctioning and not to verify compliance with the state's requirements.  *Id.* ¶¶ 238-39.  Rainey determined that Buck's letters did not satisfy the conditions of the permit.  *Id.* ¶ 240.  He contacted James A. Jacobsen from the state Department of Health and Human Services to obtain advice on his interpretation of the waste water rules.  *Id.* ¶¶ 241-42.  The primary job duty of Jacobsen, who had been employed by the Maine Bureau for Disease Prevention Control since 1997 as an environmental specialist, was to review and issue approvals for engineered systems.  *Id.* ¶¶ 243-44.  Jacobsen provided information to Rainey and exchanged correspondence with NCF's attorney.  *Id.* ¶¶ 246-47.  He analyzed NCF's septic system based on Buck's observations and concluded that the system did not conform to the Department's Subsurface Waste Water Disposal rules.  *Id.* ¶¶ 251-52.  He recommended that a formal notice of violation be issued to the owners of NCF and that the operation of its facility cease until a conforming on-site sewage disposal system was installed.  *Id.* ¶¶ 254-55.  Rainey relied on Jacobsen's opinions in deciding on his next action.  *Id.* at 262.

On August 26, 2005, the town filed a Rule 80K Land Use Citation and Complaint – Request for Temporary Restraining Order and Injunctive Relief against NCF in state district court.  *Id.* ¶ 266.  On September 14, 2005, the town filed an amended complaint in this action.  *Id.* ¶ 267.  A pretrial conference was held before Judge Field on September 23, 2005.  *Id.* ¶ 270.  Judge Field did not grant the town's request for a temporary restraining order.  *Id.* ¶ 271.

On January 11, 2006, Young sent a memorandum to the town's budget committee which referred to a warrant to raise $10,000 at a special town meeting to be held on January 25, 2006. *Id*. ¶¶ 272-73.[3] The memorandum sets out the additional funds requested and the purpose for the funds, including, under the title "Expenditures . . . North Creek Farms Case (Violation of CEO Order)." *Id*. ¶ 274.[4]  Young chose the language in the memo because he believed that NCF had failed to comply with Rainey's July 8, 2005 order.  *Id*. ¶ 275.

The plaintiff alleges that the parenthetical phrase "Violation of CEO Order" in the memo dated January 11, 2006, addressed to the Phippsburg budget committee, and available to the public, was untrue.  *Id*. ¶¶ 55-56.  Verrier attended the January 25, 2006, special town meeting and raised her hand to speak, but was never recognized by the moderator.  Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF beginning at 45) ¶ 363; Defendants' Reply to Plaintiff's Opposing Statement of Material Facts[5] and Additional Facts ("Defendants' Responsive SMF") (Docket No. 55) ¶ 363.[6]

---

[3] The plaintiff purports to deny paragraph 273 of the defendants' statement of material facts, but only because "[t]he statement is incorrectly worded based on the memo reference."  Plaintiff's Responsive SMF ¶ 273.  The recitation of the facts in the text comports with the minor corrections made by the plaintiff in its denial.

[4] The plaintiff purports to deny paragraph 274 of the defendants' statement of material facts, but only because "[t]he statement is incorrectly worded based on the memo reference."  Plaintiff's Responsive SMF ¶ 274.   Again, the recitation of the facts in the text comports with the minor correction made by the plaintiff in its denial.

[5] To the extent that this document presents "replies" to the plaintiff's qualifications and denials in its response to the defendants' statement of material facts, it is not contemplated by this court's Local Rule 56.  The defendants did not seek leave to file such a document.  I have accordingly disregarded that section of the document.

[6] The defendants object to this paragraph and ask that it be stricken because "it sets forth more than one fact in violation of F.R.Civ. P. Rule 56."  Defendants' Responsive SMF ¶ 363.  This objection and request is made to all but one of the paragraphs in the plaintiff's statement of material facts.  *Id*. ¶¶ 353-72.  Federal Rule of Civil Procedure 56 includes no such requirement.  Assuming that the defendants meant to refer to this court's Local Rule 56(b), which requires that each material fact be set forth in a separately numbered paragraph, the objection rests on an overly narrow reading of that rule.  None of the paragraphs in the plaintiff's statement of material facts contains more than four sentences, and most contain only two.  The defendants have made no attempt to demonstrate that any of the paragraphs is rendered confusing or that they had any difficulty in presenting a single substantive response to each paragraph.  The objections are overruled.

On June 14, 2006, Rainey hand-delivered to Jacob a letter of even date which detailed the town's position on NCF's activities and specified the violations of state law which it believed had taken place.  Defendants' SMF ¶¶ 278-79; Plaintiff's Responsive SMF ¶¶ 278-79.   The letter also ordered NCF to immediately cease and correct use of the cesspool in connection with the commercial preparation of food for sale, take-out, and on-premises consumption until an approved method of waste water disposal had been installed for this use and to remove a sink and its associated piping until an approved method of waste water disposal had been established and a permit obtained for its installation.  *Id*. ¶ 280.

On advice of the town's general counsel, Rainey requested that the town consider the revocation of NCF's conditional permit.  *Id*. ¶ 281.   On June 14, 2006, the selectmen met to discuss a Notice of Violation letter dated June 14, 2006.  *Id*. ¶ 282.  Jacob attended the meeting. *Id*. ¶ 283.  The board of selectmen voted unanimously to authorize the town attorney to enforce the terms of Rainey's July 8, 2005 letter, if NCF refused to comply.  *Id*. ¶ 285.  The board also voted unanimously to hold a joint meeting with the planning board to discuss possible revocation of NCF's June 15, 2005, conditional business permit.  *Id*. ¶ 286.

Cotton prepared a plan dated June 16, 2006, for a replacement system for NCF.  *Id*. ¶ 292.  The condition with which NCF was required to comply was submission of proof of adequacy of the existing system.  *Id*. ¶ 293.

On June 22, 2006, Young notified NCF by mail that the board of selectmen and the planning board would hold a joint business hearing to consider revoking the conditional expansion of business permit that had been issued on June 15, 2005.  *Id*. ¶ 295.  On June 30, 2006, public notification concerning the hearing, set for July 12, 2006, appeared in the Bath-Brunswick *Times Record* newspaper.  *Id*. ¶ 296.  NCF alleges that the notice gave no indication

14

of what issues or circumstances an unspecified defendant believed warranted considering revoking the permit. *Id*. ¶¶ 57-58. The plaintiff alleges that the publication of the notice defamed it. *Id*. ¶ 61.

Notice of the public hearing was posted in various facilities in the town and surrounding area based upon the town's standard practice. *Id*. ¶ 297. Any business hearing held by the town requires that abutters, the board of selectmen, and the planning board be notified. *Id*. ¶ 298. At the time that the public notice was given, the land use action under Maine R. Civ. P. 80K was pending in state district court. *Id*. ¶ 59.

The joint meeting was held on July 12, 2006. *Id*. ¶ 299. The focus of the meeting was proof of the adequacy of the existing waste water disposal system at NCF. *Id*. ¶ 300. The planning board could not change the requirements set forth in the conditional permit issued on June 15, 2005. *Id*. ¶ 301. The selectmen and the planning board voted unanimously to revoke NCF's June 15, 2005, permit for failure to comply with the condition requiring that the septic system be adequate to serve the proposed business use. *Id*. ¶ 305. On advice of counsel, no representative of NCF attended the July 12, 2006 meeting. *Id*. ¶ 306. Young did not attend the meeting. *Id*. ¶ 304. The plaintiff alleges that the decision at the July 12, 2006 meeting to revoke its permit had no legal significance because the land use action was pending. *Id*. ¶ 60. NCF received bad publicity as a result of the revocation of its permit. Plaintiff's SMF ¶ 372; Defendants' Responsive SMF ¶ 372.

On July 13, 2006, Rainey informed NCF by mail that the permit had been revoked. Defendants' SMF ¶ 307; Plaintiff's Responsive SMF ¶ 307. The letter included a statement that NCF no longer had a permit to prepare food on the premises or to serve food on the premises for

on-premises consumption. *Id*. ¶ 308. Young was not involved in the preparation or transmittal of this notice. *Id*. ¶ 309. The decision to revoke NCF's permit was not appealed. *Id*. ¶ 310.

On July 10, 2006, NCF submitted to Jacobsen a subsurface waste water disposal application form seeking approval of Cotton's proposed system. *Id*. ¶ 311. The Department of Health and Human Services determined "that the proposed design meets or exceeds the provisions of the Subsurface Waste Water Disposal Rules . . . for a twelve seat eating place with single service items and three employees." *Id*. ¶ 312. The Department recommended that the town issue a permit for the installation of the proposed system. *Id*. ¶ 313. On July 26, 2006, Jacob signed and submitted to the town an application for a permit to install a new subsurface waste water disposal system. *Id*. ¶ 314. The town granted a permit for the installation of the new system on the same day. *Id*. ¶ 315.

On August 16, 2006, the town's planning board and board of selectmen met to adopt the written findings of prior meetings about the plaintiff's permit. *Id*. ¶¶ 317-18. The proposed findings had been prepared by the town's general counsel. *Id*. ¶ 321. The only issue at this meeting was the adoption of specific findings that NCF had failed to provide evidence of the adequacy of its existing disposal system. *Id*. ¶ 322. No additional business was conducted. *Id*. ¶ 320. Someone at the August 16 meeting asked, "So we did not get any information at all from North Creek Farms?" *Id*. ¶¶ 63, 323. Varian, who understood the question to inquire whether NCF had submitted any evidence establishing the adequacy of the existing system, replied, "No, none at all." *Id*. ¶¶ 324-25. NCF alleges that this was not true. *Id*. ¶¶ 64-65.

The plaintiff alleges that one or more of the defendants stated to Jacobsen, or someone else at the Maine Department of Health and Human Services, that NCF had been asked to install a replacement septic system and had refused to do so, a statement which it alleges was untrue.

*Id.* ¶¶ 66-67.  The plaintiff alleges that one or more of the defendants reported to the state that NCF had no running water, a statement which it alleges was untrue.  *Id.* ¶¶ 68-69.  It alleges that the town's pursuit of an independent action to revoke NCG's conditional business permit during the pendency of the Rule 80K proceeding was unconstitutional.  *Id.* ¶ 71. It also alleges that the issuance of the notice of the July 12, 2006, hearing during the pendency of the Rule 80K action violated its due process rights.  *Id.* ¶ 72.

An initial testimonial hearing was held in the Rule 80K proceeding in Maine District Court in West Bath on March 21, 2006.  *Id.* ¶ 326.  At the hearing, the court heard testimony from Jacobsen, Buck, and Cotton.  *Id.* ¶ 329.  On November 9, 2006, the town moved to amend its Rule 80K complaint to include additional alleged violations.  *Id.* ¶ 330.[7]  A second testimonial hearing was held in the Rule 80K proceeding on March 1, 2007.  *Id.* ¶ 331.  At this hearing, the court heard the testimony of Rainey, Verrier, Buck, Cotton, Jacobsen, and Jacob.  *Id.* ¶ 332.

On June 6, 2007, Judge Field issued his decision in the Rule 80K proceeding, granting the town's motion to amend its complaint, finding that NCF had violated the terms of its business permit, and ordering NCF to "cease and desist all operations greater in scope than permitted under their Business Permit dated November 11, 2001."  *Id.* ¶¶ 333-36.  Judge Field found that the use of the term "adequate" regarding a system's compliance is a term of art referring to a system's compliance with all rules and regulations.  *Id.* ¶ 337.  He held that the requirements imposed on NCF at the June 15, 2005, business hearing were explained to NCF by the town on multiple occasions.  *Id.* ¶ 338.  Judge Field also held that the permit expressly

---

[7] The plaintiff purports to deny this paragraph of the defendants' statement of material facts, but that denial addresses only the times at which the additional violations were alleged to have occurred, Plaintiff's Responsive SMF ¶ 330, a factual element that I do not find to be material to the claims in the instant action.  I have therefore not included that element in the text.  The information included in the text is not challenged by the plaintiff and accordingly is deemed admitted.

required NCF to comply with state law in operating its business and explicitly placed the burden on NCF to demonstrate compliance with the Subsurface Wastewater Disposal Rules. *Id.* ¶¶ 339-40. He held that NCF's position that it merely had to prove that the system was functionally adequate was untenable. *Id.* ¶ 341.

Judge Field found that Rainey had clearly notified NCF of the alleged violation in his July 8, 2005, letter. *Id.* ¶¶ 342-43. He held that further correspondence between the principals in the case provided "more than adequate" notice of the specific provisions of the Maine Subsurface Wastewater Disposal Rules that the town alleged NCF had violated. *Id.* ¶ 344. He ruled that his denial of the town's request for a preliminary injunction barring NCF from preparing and serving food for on-site consumption should not be interpreted as preventing the town from taking further non-court action to enforce the permit. *Id.* ¶ 345. NCF did not appeal from Judge Field's decision. *Id.* ¶ 347.

On September 21, 2007, Judge Field signed a consent judgment in the Rule 80K action which awarded the town $18,000 in attorney fees. *Id.* ¶ 348. The consent judgment also provided that NCF would pay a $2,000 penalty for violating land use provisions. *Id.* ¶ 349. The court granted a judicial lien in the amount of $20,000, with interest accruing at the rate of 7 % per year. *Id.* ¶ 350. NCF was further ordered to "cause a septic system to be installed on the premises located on NCF, with construction commencing on or before September 27, 2007 . . . . As set forth in the June 15, 2005 permit, the septic system shall have the capacity to service the twelve seat food service business (which is the seating limit[] under the permit) serving meals for on premise consumption." *Id.* ¶ 351. After conclusion of the state District Court litigation, NCF installed the system designed by Cotton. *Id.* ¶ 352.

As of October 28, 2008, NCF is in good standing with the Maine Secretary of State. Plaintiff's SMF¶ 354; Defendants' Responsive SMF ¶ 354.[8]

### III.  Discussion

### A.  Corporate Status

The defendants begin by "question[ing] the capacity of NCF to maintain this lawsuit." Defendant Town of Phippsburg's Motion for Summary Judgment ("Town Motion") (Docket No. 21) at 7; Defendant David Barnes's Motion for Summary Judgment ("Barnes Motion") (Docket No. 20) at 2; Defendant  Leighton Rainey's Motion for Summary Judgment ("Rainey Motion") (Docket No. 22) at 8; Defendant Marie Varian's Motion for Summary Judgment ("Varian Motion") (Docket No. 23) at 5; Defendant John Michael Young's Motion for Summary Judgment ("Young Motion") (Docket No. 24) at 4.  The question is apparently based on the fact that NCF was administratively dissolved at the time it filed this action.  Town Motion at 7. However, it is unquestioned that NCF is now in good standing with the State of Maine, and, when a Maine corporation has been reinstated after administrative dissolution, the reinstatement "relates back to and takes effect as of the effective date of the administrative dissolution."  13-B M.R.S.A. § 1114(3).  Thus, NCF currently has the capacity to maintain this action.

The defendants veer into a discussion of the doctrine of piercing the corporate veil at this stage of their presentation, which discussion does not appear to be relevant to whether NCF has the capacity to bring this lawsuit.  The doctrine of piercing the corporate veil may be used by a plaintiff to impose liability on the owner of a corporation as an individual, preventing him or her from using the corporate form to cover fraud or illegality.  *Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, ¶¶ 4-7, 720 A.2d 568, 571.  It is not available to force corporate

---

[8] The defendants' substantive denial of some portion of paragraph 354 is not supported by a citation to authority as required by Local Rule 56(c), Defendants' Responsive SMF ¶ 354, and the entire paragraph is accordingly deemed admitted.

owners to bring an action in their own names instead of through the corporation, which is apparently what the defendants seek in this case.  Even "setting aside the . . . corporate shell," in the defendants' formulation, would not necessarily lead to "dismissal of its case against municipal officials and volunteers," Town's Motion at 9, but only to replacing NCF as the plaintiff with Verrier and Jacob.  The defendants take nothing by this argument.

### B.  Defamation (Count I)

The complaint alleges that the town, "through its officials (employees), including the named individual Defendants, has made false and defamatory statements concerning Plaintiff and its principals."  Complaint ¶ 7.  It demands "appropriate damages for Defendants' defamatory acts."  *Id*. at 5.  First, the corporate plaintiff may not obtain damages for any torts against its principals; those causes of action belong only to those individuals, who are not plaintiffs in this action.  Second, the plaintiff has disavowed any defamation claim against the town itself, despite the wording of the complaint.  Plaintiff's Memorandum in Opposition to Defendant Town of Phippsburg's Motion for Summary Judgment ("Opposition to Town Motion") (Docket No. 42) at 17.  It concedes that the town is immune from that claim.  *Id*.  I will accordingly not consider further any such claim against the town.

The individual defendants claim that discretionary function immunity protects them from the defamation claims.  Varian Motion at 7-9; Barnes Motion at 4; Rainey Motion at 10; Young Motion at 8-9.  The governing statute provides, in relevant part:

> [E]mployees of governmental entities shall be absolutely immune from personal civil liability for the following:
>
> * * *
>
> **C**.  Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;
>
> * * *

> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees . . . who are required to exercise judgment or discretion in performing their official duties.

14 M.R.S.A. § 8111(1). "Employees of governmental entities" include persons acting on behalf of a municipal entity, with or without compensation. 14 M.R.S.A. § 8102(1). All of the individual defendants fit within this definition.

The plaintiff does not specify what it alleges constitutes defamation by Varian. Plaintiff's Memorandum in Opposition to Defendant Marie Varian's Motion for Summary Judgment ("Opposition to Varian Motion") (Docket No. 39) at 6. Rather, it simply refers to its opposition to the town's motion. *Id*. That document contains no discussion of the substance of the defamation claim; it merely disclaims any defamation claim against the town. Opposition to Town's Motion at 17. While a court may not grant a motion for summary judgment merely because the plaintiff fails to submit any written opposition to the motion, *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005), the court should not be expected to pore through the record of the case to find what might be the factual basis of a particular allegation in the complaint. That said, the only allegations in the complaint that could possibly be read to allege defamation against Varian appear in paragraph 18: that Varian's response to a question at the August 16, 2006, joint meeting of the board of selectmen and the planning board, that the town did not get any information at all from the plaintiff, was "not true." Complaint ¶ 18.

It was part of Varian's duty as chair of the planning board, as it would be for any chair of any municipal planning board, to respond to questions from the public at public meetings of the board. That duty was clearly discretionary. Accordingly, the only action by Varian alleged to

have constituted defamation fell within her statutory discretionary function immunity.  She is entitled to summary judgment on Count I.  *See generally Gove v. Carter*, 2001 ME 126, ¶¶ 12-16, 775 A.2d 368, 373-75.

The plaintiff takes the same approach to Barnes's motion, incorporating its response to the town's motion by reference, Plaintiff's Memorandum in Opposition to Defendant David Barnes' Motion for Summary Judgment ("Opposition to Barnes Motion") (Docket No. 37) at 2. This portion of its presentation is no more helpful than was the case with Varian's motion. However, in this case the plaintiff goes on to suggest what it alleges were "Barnes' pertinent actions."  *Id.*  It relies on Verrier's recollection that unnamed "state officials" informed her that Barnes reported to the state Department of Health and Human Services that NCF had no running water, which it characterizes as a "false report[]."  *Id.* at 2-3.  The problem for the plaintiff here is that the defendants have properly objected to the only evidence provided by the plaintiff on this point, Plaintiff's SMF ¶ 361, as hearsay, Defendants' Responsive SMF ¶ 361.  Accordingly, it is not admissible evidence, as required by Fed. R. Civ. P. 56(e)(1), and may not be considered. Barnes is therefore entitled to summary judgment on Count I.

With respect to Young, the plaintiff makes clear that the alleged defamation consisted of the words "Violation of CEO Order" in his memorandum to the budget committee.  Plaintiff's Memorandum in Opposition to Defendant John Michael Young's Motion for Summary Judgment ("Opposition to Young Motion") (Docket No. 40) at 5.  It argues that the subject phrase is not a statement of opinion, and that "[t]here was no established truth to the statement" when it was made.  *Id.* at 5-6.  It does not address Young's invocation, Young Motion at 9, of discretionary function immunity.  The plaintiff has essentially admitted that the choice of terminology to be used in that memorandum or notice was within Young's discretion.

Defendants' SMF ¶ 277; Plaintiff's Responsive SMF ¶ 277.[9]  It has also admitted that Young's

duties included carrying out the day-to-day administration of the town offices.  *Id*. ¶ 24.

Providing notice of the issues to be considered at the next meeting of the town's budget

committee is clearly within the scope of the duties of a town administrator.  The plaintiff argues

that Young had no duty "to make negative false statements about the status or nature of a case,"

Opposition to Young Motion at 6 (emphasis omitted), but that argument fails.  So characterizing

the action at issue in this case reads out of the immunity statute the very concept of immunity for

abuse of discretion.   The action at issue is the writing and publishing of notice or an agenda of a

public meeting.  That action is reasonably encompassed by the duties of a town administrator,[10]

and the choice of words to carry out that action is a discretionary act.  The immunity provided by

14 M.R.S.A. § 8111(1) extends to the action at issue, and Young is therefore entitled to summary

judgment on Count I.

Defendant Rainey also invokes discretionary function immunity, asserting that "[t]here is

no evidence that [he] acted outside the scope of his discretionary authority."  Rainey Motion at

10.  The plaintiff responds that Rainey's actions in June, July, and August were "clearly 'outside

the scope of his discretionary authority.'"  Plaintiff's Memorandum in Opposition to Defendant

Leighton Rainey's Motion for Summary Judgment ("Opposition to Rainey Motion") (Docket

No. 38) at 9.  It describes the specific actions it apparently deems to constitute defamation (the

only tort alleged in the complaint) as "not only (1) literally signing on to the Town's Land Use

---

[9] The plaintiff's response to paragraph 277 of the defendants' statement of material facts is as follows: "Qualified. The statement purports to state a conclusion regarding what is within Mr. Young's discretion, which is a legal issue, not a factual issue.  Plaintiff admits that Mr. Young made the statement which is cited from his deposition transcript. The balance of the statement is denied."  Plaintiff's Responsive SMF ¶ 277.  The denial is unsupported by any citation to the summary judgment record and accordingly is ineffective.  Since paragraph 277 consists of a single 16-word sentence, it is unclear in any event what "[t]he balance of the statement" is.  Construing the plaintiff's qualification as an objection, the sentence does not state a legal conclusion.  Because it is supported by the citation given, as the plaintiff's response concedes, paragraph 277 is deemed admitted.

[10] The action is also essential to the accomplishment of a basic governmental program or objective, the approval of budgets for necessary municipal functions.  *See Miller v. Szelenyi*, 546 A.2d 1013, 1021 (Me. 1988).

23

Enforcement Citation and Complaint . . . and, at the same time, (2) simply because he and other Town officials were personally frustrated with the status of the matter at the state District Court, taking additional action at the municipal level ostensibly to revoke NCF's permit.  The Town officials have no 'discretionary authority' to instigate parallel simultaneous legal actions against NCF."  *Id.* (footnote omitted).  None of the activity described by the plaintiff could possibly be considered defamation, which is defined as a false and defamatory statement published to a third party without privilege, negligently made.[11]  *Rice v. Alley*, 2002 ME 43, ¶ 19, 791 A.2d 932, 936.  On the showing made by the plaintiff, Rainey is also entitled to summary judgment on Count I.

### C.  Constitutional Claims  (Count II)

*1.  Claims against the Town.*  Count II of the complaint alleges that the town "and/or one or more individual Defendants" are liable to the plaintiff for the deprivation of "some rights, privileges, or immunities secured by the U.S. Constitution and the laws of this country."  Complaint ¶¶ 28, 30.  The defendants assume that the plaintiff means to invoke the rights of due process and equal protection.  Town Motion at 9; Barnes Motion at 3; Rainey Motion at 8; Varian Motion at 5; Young Motion at 4.  In its response, the plaintiff disavows any equal protection claim.  Opposition to Town Motion at 12.  It asserts that its procedural and substantive due process rights, as well as its liberty interest, were violated by the defendants.  *Id.* 13-17.[12]

In order to demonstrate injury to its liberty interest, the corporate plaintiff must show a loss of business opportunities or damage to its reputation.  *Med. Corp., Inc. v. City of Lima*, 296

---

[11] If the plaintiff means to allege that the filing of the citation and complaint with the Maine District Court itself constituted defamation, allegations made in court pleadings are absolutely privileged.  *Dineen v. Daughan*, 381 A.2d 663, 664 (Me. 1978).

[12] The plaintiff also contends that the defendants have deprived its principals of a constitutionally-protected liberty interest – "a liberty interest in one's self employment and the conduct of one's own home business and livelihood." Opposition to Town Motion at 16-17.  Again, the corporate plaintiff may not assert claims on behalf of Verrier and Jacob as individuals; those claims belong to those individuals, and they are not plaintiffs in this case.

F.3d 404, 407 (6th Cir. 2002).  There is no constitutional liberty interest in one's reputation standing alone; the allegedly stigmatizing statements must be made in connection with the loss of a governmental right, benefit, or entitlement.  *Id*. at 414.  The plaintiff must also show that the defendant made defamatory statements that would foreclose its freedom to take advantage of other business opportunities.  *Id.*  "[A] *sine qua non* of a 'stigma-plus' suit [,which the plaintiff asserts here, Opposition to Town Motion at 16-17,] is that the 'plus' must be the result of state action directly affecting the plaintiff's rights or status under the law.  The fact that state action may be involved in the 'stigma' (*i.e.*, defamation) is not of itself sufficient to maintain the action."  *WMX Techs., Inc. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996) (citation omitted). Here, assuming that the plaintiff can establish that one or more of the defendants defamed it, the plaintiff has made no showing that the alleged defamation foreclosed its freedom to take advantage of other business opportunities.  Particularly here, where the presumably temporary loss of its business expansion permit has been upheld by the Maine District Court in a decision from which the plaintiff took no appeal, the plaintiff has not shown that any liberty interest it might have had has been injured.

With respect to the plaintiff's procedural and substantive due process claims, the plaintiff identifies the actions that allegedly violated its procedural due process rights as "the Town's purported revocation of [the conditional expansion permit] at a joint hearing on July 12, 2006," in that "the notice for the hearing was inadequate" and "the Town's action was improper given that the Town had already filed a Land-Use Enforcement case in state District Court, in which the legal status of the permit was a principal issue."  Opposition to Town Motion at 14.  As for its substantive due process claim, the plaintiff asserts that "the Town's actions during June, July and August 2006, in attempting additional municipal-level legal action, while the Town-initiated

Land-Use Enforcement case was pending, [were] an 'abuse of government power,' and . . .
shocking to the conscience." *Id.* at 16.  No authority is cited in support of either argument,
apparently because the town's actions were so "obviously absurd and illegal" that "supportive
related case law is usually only tangential to the principle." *Id.* at 15 & n.7.

The town contends, repeatedly, that the plaintiff had no property interest in the
conditional expansion permit because "Maine . . . does not recognize a 'property interest' in
permit."  Town Reply at 4; Town Motion at 15-16.  A procedural due process claim under
section 1983 requires a plaintiff to show that it has a property interest and that the conduct
complained of, committed under color of state law, deprived it of that interest without
constitutionally adequate procedure.  *JSS Realty Co. v. Town of Kittery,* 177 F.Supp.2d 64, 71
(D. Me. 2001).  The problem with the town's argument is that, in support, it cites only case law
concerning applications for permits.  In this case, the plaintiff bases its constitutional claims on a
proceeding to revoke a conditional permit that had already been granted.  Maine law recognizes a
property interest in such circumstances.  *See, e.g., Brennan v. Johnson*, 391 A.2d 337, 340-41
(Me. 1978).

More fruitful is the town's argument that the plaintiff is collaterally estopped to argue
that the procedure provided in connection with the revocation of the permit was constitutionally
infirm because the state district court ruled on this issue in a decision from which the plaintiff did
not appeal.  Town Motion at 11-12, 13; Town Reply at 5.  The state court found that Rainey had
notified the plaintiff of the alleged violation in his July 8, 2005 letter, that this notice was clear,
and that further correspondence between the principals in this case provided more than adequate
notice of the specific provisions of the Maine Subsurface Wastewater Disposal Rules that the
town alleged the plaintiff had violated.  Defendants' SMF ¶¶ 342-45; Plaintiff's Responsive

SMF ¶¶ 342-45.  These rulings bar the plaintiff from asserting his procedural due process claim that notice "for the [July 12, 2006] hearing" was constitutionally deficient.  *Cinelli v. Revere*, 820 F.2d 474, 479 (1st Cir. 1987); *Davenport v. City of Caribou*, 2008 WL 2223289 (D. Me. May 22, 2008), at *14-*15.

Neither party provides the court with much assistance with respect to the plaintiff's procedural due process claim arising from the fact that the revocation proceeding took place while the town's Rule 80K action was pending in state court.  *Young v. Baker*, 2004 WL 1088353 (Mass. Land Ct. May 17, 2004), the only authority cited by the plaintiff on this point, Opposition to Town's Motion at 15, is not applicable to this situation.  In that case, the question was whether and when a putative plaintiff was sufficiently aggrieved to have standing to bring an appeal of a town zoning board decision.  *Id*. at *3-*5.  That scenario is readily distinguishable from the claim at hand.   "At the core of procedural due process jurisprudence is the right to advance notice of a significant deprivation of liberty or property, and a meaningful opportunity to be heard prior to that deprivation."  *Higgins v. Penobscot County Sheriff's Dep't*, 2005 WL 1331200 (D. Me. June 2, 2005), at *14.  The inquiry examines the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by law.  *Graffam v. Town of Harpswell*, 250 F.Supp.2d 1, 6 (D. Me. 2003).  I have already rejected the plaintiff's assertion that the notice of the July 12, 2006, joint meeting of the selectmen and the planning board violated its due process rights. The remainder of the plaintiff's presentation, alleging that the town's pursuit of two parallel methods of determining that the plaintiff had violated its business expansion permit also violated the tenets of procedural due process, simply does not state a claim of such a violation.  The town is

entitled to summary judgment on the procedural due process claims asserted against it by the plaintiff.

The plaintiff spends little time or effort discussing its substantive due process claim, describing its procedural due process claim as "paramount." Opposition to Town Motion at 16. As the First Circuit has noted in dealing with a substantive due process claim arising out of municipal permitting, "we have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. . . . We have left the door slightly ajar for federal relief in truly horrendous situations. But this circuit's precedent makes clear that the threshold for establishing the requisite 'abuse of government power' is a high one indeed." *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992). The plaintiff's observation that it originally filed this case in state, not federal, court, Opposition to Town Motion at 16, an apparent attempt to avoid the application of the holding in *Nestor Colon*, is unavailing because the plaintiff has invoked its federal, not its state, constitutional rights in its complaint. Viewing the facts presented by the plaintiff with the benefit of reasonable inferences in its favor, as required in connection with a motion for summary judgment, leaves me with the firm conclusion that the plaintiff has not presented facts that would allow a reasonable fact finder to conclude that the town's challenged actions either shock the conscience, constitute abuse of government power, or are not sufficiently tied to a legitimate municipal interest. *Nestor Colon*, 964 F.2d at 45. The town is accordingly entitled to summary judgment on any asserted substantive due process claim.

Thus, the town is entitled to summary judgment on Count II.

*2.  Claims against the individual defendants.*   The plaintiff states that its constitutional claims are not asserted against Barnes or Young, Opposition to Barnes Motion at 2; Opposition to

28

Young Motion at 3, a fact that is not otherwise apparent on the face of the complaint, Complaint ¶¶ 27-30.  Barnes and Young are accordingly entitled to summary judgment on Count II.

With respect to Rainey and Varian, the plaintiff begins by "incorporat[ing] by reference its reply on this issue as stated in its Memorandum in Opposition to Defendant Town's Motion for Summary Judgment."  Opposition to Rainey Motion at 6; Opposition to Varian Motion at 5.  Nothing in the section of that document dealing with its constitutional claims sheds any light on the plaintiff's constitutional allegations against Rainey and Varian as individuals.   As Rainey and Varian point out, Reply Memorandum to Plaintiff's Memorandum in Opposition to Defendant Leighton Rainey's Motion for Summary Judgment ("Rainey Reply") (Docket No. 50) at 3; Reply Memorandum to Plaintiff's Memorandum in Opposition to Defendant Marie Varian's Motion for Summary Judgment ("Varian Reply") (Docket No. 53) at 2, the legal criteria applicable to claims against municipalities brought under section 1983 differ from those applicable to claims against individuals.  I therefore will address only the specific constitutional claims against these individuals identified by the plaintiff.

Rainey asserts that the plaintiff has failed to specify any constitutional right that it claims he violated.  Rainey Motion at 8-9; Rainey Reply at 3.  However, the plaintiff's submission, fairly read, alleges that Rainey violated its constitutional rights in the following ways: by requesting that the town consider revoking the plaintiff's conditional expansion permit; by seeking out ways to take further action against the plaintiff;[13] by being responsible for giving the plaintiff inadequate notice, presumably of the July 12, 2006, meeting; and by causing the plaintiff to be involved simultaneously in the Rule 80K court proceeding and the town's

---

[13] The only authority cited by the plaintiff for this allegation is Rainey's deposition.  Opposition to Rainey Motion at 6.  References in a party's brief to factual sources other than a party's statement of material facts will not be considered by this court.  *Vertrue, Inc. v. Graham*, 2007 WL 2071792 (D. Me. July 17, 2007), at *6 n.5; *Lafortune v. Fiber Materials, Inc.*, 2004 WL 2378861 (D. Me. Oct. 25, 2004), at *7 n.5.

revocation of the conditional expansion permit.  Opposition to Rainey Motion at 6-7.  The latter two alleged violations of constitutional rights fall within the rubric of due process, as has already been discussed.  The plaintiff says nothing more about the former two, and neither appears to me on its face to implicate any particular federal constitutional or statutory right.   I will not consider them further.

Rainey asserts a defense of qualified immunity, Rainey Motion at 9, but it is not necessary to reach that issue.  Even assuming that Rainey could be held individually liable for the alleged failure to provide the plaintiff with adequate notice of the July 12, 2006, meeting and for the fact that the town entered into proceedings to revoke the plaintiff's conditional expansion permit after filing the Rule 80K action in state court, my conclusion that the Maine District Court's ruling in the court action estops the plaintiff from pursuing a claim of inadequate notice, which I reached in considering the town's motion, applies here as well.  Contrary to the plaintiff's assertion, Opposition to Rainey Motion at 7, it cannot maintain this claim that the notice was inadequate at the relevant time because the court did not rule on this issue until June 6, 2007, 11 months after the conduct in question.   The fact that the notice was adequate has now been established as a matter of law, and that fact bars the plaintiff's claim as it is now being pressed in court.

I have also determined that the plaintiff has failed to show that any violation of its procedural due process rights occurred because the state court proceedings were underway when the town began administrative revocation proceedings.  That determination is fatal to any claim against Rainey individually for a procedural due process violation.  As for any claim based on the plaintiff's substantive due process rights, the plaintiff discusses only the town's conduct, not that of Rainey as an individual.  *Id*. at 8-9.  Even if the facts included in the plaintiff's statement

of material facts were generously read in its favor, Rainey's alleged conduct does not rise to the level of reflecting a reckless or callous indifference to the plaintiff's rights, a level of conduct required in order to establish individual liability for a violation of substantive due process. *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir. 1990).  Rainey is entitled to summary judgment on Count II.

Much of this analysis applies equally to the plaintiff's constitutional claim against Varian, so far as I can understand it.  The plaintiff states that Varian "should know that, as a public official, she has no right to make false statements at public meetings regarding NCF or anyone else, as she did on August 16, 2006.  Her statement . . . was part of the overall actions taken by the Town in three separate meetings (June 14, July 12, and August 16, 2006), in which she participated, and which deprived NCF of its constitutional rights."  Opposition to Varian Motion at 5-6.  There is no specification of the constitutional rights which the plaintiff claims were violated by Varian.  Mere "participation" in public meetings called by the town cannot, standing alone, establish individual liability for violation of the plaintiff's due process rights. Moreover, a defamation claim without more does not state a cause of action under section 1983. *Paul v. Davis*, 424 U.S. 693, 706-10 (1976).  My earlier conclusion that the plaintiff has not provided sufficient evidence to allow a reasonable fact finder to conclude that the town violated the plaintiff's constitutional rights as a result of Varian's alleged actions applies as well to bar any claim against her individually arising out of that same conduct.  Varian is entitled to summary judgment on Count II.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motions for summary judgment be **GRANTED.**

***NOTICE***

  *A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which __de novo__ review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

  *Failure to file a timely objection shall constitute a waiver of the right to __de novo__ review by the district court and to appeal the district court's order.*

Dated this 8th day of January, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
